# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENSEN SHIRLEY and KAREN SHIRLEY,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 18CV994 AJB (BGS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL RESPONSES TO COLONIAL LIFE DISCOVERY**<br><br>[ECF 14] |

Plaintiffs have filed a Motion to Compel Responses to *Colonial Life*[1] Discovery. (Mot. to Compel. ("Mot.") [ECF 14].) Plaintiffs seeks to compel Defendant Allstate Insurance Company to provide them with the names and addresses of every Allstate insured that presented a claim to Allstate arising out of the Lilac Fire to allow them to obtain the insureds claim files. (*Id.* at 5-6,[2] Special Interrogatories Nos. 1-2.) Allstate has filed an Opposition and Plaintiffs a Reply. (ECF 15, 16.) For the reasons set forth below, the Motion to Compel is **DENIED**.

---

[1] As discussed more fully below, Plaintiffs seek to use a notice procedure described in *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal. 3d 785 (1982); (*see infra* III.A.1.)

[2] Unless otherwise noted, the Court references the pagination of the parties' memorandum of points and authorities.

## I. BACKGROUND

Plaintiffs allege that their home suffered smoke damage as a result of the Lilac Fire in December 2017. (ECF 1-3 ("Complaint") ¶ 7.) Plaintiffs were covered by a homeowner's policy issued by Allstate, but their claim for coverage under the policy was denied by Allstate on December 29, 2017. (*Id.* ¶ 9.) Plaintiffs assert that the "denial was based upon an unreasonable and wrongful interpretation of the Policy, the unreasonable failure to find damage at the Property, as well as an insufficient, incomplete, and biased investigation conducted by Allstate."[3] (*Id.*) Plaintiffs' Complaint asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing and seeks general, special, and punitive damages. (*Id.* at 5 and ¶¶ 10-21.)

There are two special interrogatories at issue in this dispute, included here:

**SPECIAL INTERROGATORY NO. 1**

Please set forth the name(s) and address(es) of each and every Allstate insured who presented a claim to YOU arising out of the Lilac Fire of December, 2017, and whose claim was denied, either in whole or in part. . . .

**SPECIAL INTERROGATORY NO. 2**

Please set forth the name(s) and address(es) of each and every Allstate insured who presented a claim to YOU arising out of the Lilac Fire of December, 2017, and whose claim was paid, either in whole or in part. . .

(Mot. at 5-6.) In short, Plaintiffs seeks the names and addresses of every Allstate insured that submitted a claim arising out of the Lilac Fire whether paid, denied, or something in between. Based on information provided by Allstate to Plaintiffs, there are

---

[3] In opposing Plaintiffs' Motion, Allstate submits significant evidence regarding whether there was in fact any damage to Plaintiffs' home, including both Plaintiffs' and Allstate's experts' analysis. Given this is a discovery motion and the Court need not reach Allstate's argument that evidence of damage is required to obtain discovery, the Court does not include a summary of that evidence here.

72[4] Allstate claim files from the Lilac fire. Plaintiffs seek to issue a Court approved letter to all the insureds using the names and addresses provided in response to the above interrogatories, a *Colonial Life* notice. The letter will seek the insureds' consent for Allstate to disclose their respective claim files to Plaintiffs.

Allstate did not provide the requested information, instead objecting on numerous bases, including that disclosure of this information would violate the privacy rights of the insureds whose information Plaintiffs seek, the information sought is not relevant, not proportional to the needs of the case, overbroad, and that any probative value is outweighed by the burden and expense of searching and reviewing claim files. (Opp'n at 1, 10-20.)

## II. APPLICATION OF FEDERAL AND STATE AUTHORITY

Plaintiffs' Motion implicates both state and federal authority. "In diversity actions, [like this one], where state law controls the substance of the lawsuit, procedural law is provided by federal authority, including for discovery purposes." *Collins v. JC Penney Life Ins.*, Case No. 02CV674 L (LAB), 2003 WL 25945842, at *1 (S.D. Cal. 2003) (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995)); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 285 (C.D. Cal. 1998) ("Discovery is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant"); *see also Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial , California and 9th Cir. Editions* ("Federal Practice Guide") § 1:284 (2019) ("Generally, federal courts apply federal discovery rules in diversity actions and conflicting state rules are disregarded.")

However, "[i]n a federal action based on diversity of citizenship jurisdiction, state law governs privilege claims" and "[t]o the extent privacy is a matter of privilege under

---

[4] Plaintiffs' Motion indicates there are 72 claim files at issue. (Mot. at 16.) Allstate refers to 73 claim files. (Opp'n at 1, 11-12.) The Court's analysis applies to all the claim files at issue in the motion, whether 72 or 73 files.

state law, federal courts will honor the privilege and protect the responding party from discovery." *Oakes*, 179 F.R.D. at 284 (quoting *California Practice Guide: Federal Civil Procedure before Trial*, § 11:77 (1996 revised)). "A federal court sitting under diversity jurisdiction in California will apply California law as to the right of privacy." *Crews v. V. Domino's Pizza Corp.*, Case No. CV 08-3703-GAF (SSx), 2009 WL 10672352, at *5 (C.D. Cal. Aug. 20, 2009). The California Constitution "expressly grants Californians a right of privacy" in Article I, § 1. *Williams v. Superior Court*, 3 Cal. 5th 531, 552 (2017).

The Court will apply California law as to the right of privacy and federal procedural law as to the appropriate scope of discovery.[5]

## III. DISCUSSION

The Court must consider two primary issues. If the extent of the invasion of these insureds' privacy interest in having their names and addresses disclosed precludes disclosure. And, whether the discovery sought is relevant and proportional to the needs of the case.

### A. Privacy Grounds

As discussed in more detail below, Plaintiffs argue the use of the *Colonial Life* notice procedure sufficiently protects whatever minimal privacy interest the insureds have in their contact information and the insureds should be given the opportunity to disclose their files to Plaintiffs. Allstate opposes, arguing Plaintiffs' requests for names and addresses[6] of insureds for every Allstate claim associated with the Lilac fire violates

---

[5] As discussed more fully below, the Court considers the elements of Plaintiffs' claim and for punitive damages based on state law for purposes of analyzing relevancy. (*See infra* III.B.2.) Additionally, although the appropriate scope of discovery is dictated by the Rule 26, the Court has also considered and analyzed the state court cases the parties rely on. (*Id.*)

[6] Allstate's Opposition indicates that Plaintiffs are seeking phone numbers for these insureds, (Opp'n at 12), however, the two special interrogatories submitted only seek names and addresses. Accordingly, this Order does not address the provision of the insureds' phone numbers.

4

the insureds' privacy rights because Plaintiffs have failed to show a compelling need for the discovery that outweighs the insureds' privacy rights in their contact information.

### 1. *Colonial Life* Notice

The *Colonial Life* case affirmed a process set out in a trial court's decision to compel Colonial Life, an insurer, to produce the names and addresses of all persons whose claims for benefits had been assigned to a particular adjuster who engaged in a particular settlement practice (35 in all) to allow plaintiff's counsel to send them a letter requesting they consent to release their records. 31 Cal. 3d at 789-93. The *Colonial Life* court found the information was relevant to the plaintiff's claim, brought under California Insurance Code § 790.03.

This case is distinguishable from the *Colonial Life* case in a number of important respects, as discussed more fully below, however, one general rule from the case is important here. Under certain circumstances, a defendant insurance company can be compelled to provide the names and addresses of insureds whose claim files are likely to provide information relevant to a plaintiff's claim despite California Insurance Code § 791.01 et seq's limitations on an insurer's disclosure of information about its insureds. *Id.* at 792 n.10 (finding the privacy protections of § 791.01 et seq. met if the trial court's procedures – only providing names and addresses for a court approved letter to insureds to obtain consent to access their files – were followed). California Insurance Code § 791.13 prohibits an insurance company from disclosing any "personal or privileged information about an individual collected or received in connection with an insurance transaction" unless authorized by the individual or an exception applies. "'Personal information' includes an individual's name and address." Cal. Ins. Code § 791.02.

### 2. Invasion of Privacy

The parties agree that the California Constitution provides a right of privacy. *Williams*, 3 Cal. 5th at 552. And, California Insurance Code § 791.13 requires consent from an insured before an insurance company, like Allstate, can disclose information about its insureds. That is where the agreement ends.

In evaluating potential invasions of privacy, California courts follow a framework set out in *Hill v. National Collegiate Athletic Association*. *Williams*, 3 Cal. 5th at 552 (citing *Hill*, 7 Cal. 4th 1, 35 (1994)). "The party asserting a privacy right, [here Allstate,] must establish: [1] a legally protected privacy interest, [2] an objectively reasonable expectation of privacy in the given circumstances, and [3] a threatened intrusion that is serious." *Id.* Only if the three threshold requirements are met, must courts "move on to a balancing of interests." *Id.* at 555 (citations omitted). This requires "balancing the legitimate and important countervailing interests disclosure serves" against "feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy." *Williams*, 3 Cal. 5th at 552.

Allstate argues the Plaintiffs are required to demonstrate a "compelling need" to obtain the names and addresses from the claim files. (Mot at 14.) (citing *Lantz v. Superior Court*, 28 Cal. App. 4th 1839, 1853-54 (1994) and *Pioneer Elecs., Inc. v. Superior Court*, 40 Cal. 4th 360, 371 (2007))). However, in *Williams*, the California Supreme Court found the "compelling need" and "compelling interest" requirements were not always required. *Williams*, 3 Cal. 5th at 557 ("To the extent prior cases require a party seeking discovery of private information to always establish a compelling interest or compelling need, without regard to the other considerations articulated in *Hill*, . . . they are disapproved").[7] The court explained that always requiring a showing of a compelling need or compelling interest assumes an " egregious invasion is involved" rather than

---

[7] The *Williams* court goes on to list more than 20 cases in a footnote that are disapproved based on this holding, including *Lantz* and *Ombudsman v. Superior Court*, that Allstate relies on for application of the compelling need requirement. (Opp'n at 14.) (citing *Lantz*, 28 Cal. App. 4th at 1853-54 and *Ombudsman Servs. of N. Cal. v. Superior Court*, 154 Cal. App. 4th 1233, 1251 (2007)). The court clarifies that in some cases the compelling need or compelling interest requirement may have been appropriate, but the cases are disapproved to the extent they required a showing of compelling need or compelling interest without first finding the threshold *Hill* standard met. 3 Cal. 5th at 557 n.8.

properly placing the burden on the party asserting the "privacy interest to establish its extent and the seriousness of the prospective invasion" for the court to weigh against the interests the opposing party identifies. *Id.*

Here, the Court must first "place the burden on the party asserting a privacy interest, [Allstate], to establish its extent and the seriousness of the prospective invasion." *Id.* Only if this threshold showing is made will the Court engage in the balancing of interests. *Williams*, 3 Cal. 5th at 555 ("Because two of the three threshold *Hill* requirements are absent here, we need not move on to a balancing of interests."). Accordingly, because the Court finds, as discussed below, that the threshold test set out in *Hill* and reiterated in *Williams* is not met as to the third requirement, a serious invasion, the Court does not reach the balancing of interests.

Here, the interrogatories only seek names and addresses for purposes of sending a court-approved letter to the insureds and those files would only be disclosed after receiving consent from the insured. Accordingly, for purposes of the privacy analysis, the court is only considering the insureds' privacy interest in their names and addresses.

As to the first requirement, the Court finds the insureds have a legally protected privacy interest in their contact information. *Id.* at 554 (collecting cases) ("While less sensitive than one's medical history or financial data, home contact information is generally considered private."). *Id.* Even in the class action context, where plaintiffs are potentially seeking to represent the interests of those they seek contact information for, contact information is still considered private. *Id.* (summarizing cases).

As to the second requirement, whether the insureds have an "objectively reasonable expectation in the given circumstances," is a closer question. Plaintiffs rely on *Williams* and *Pioneer*, where, like here, only names and addresses were requested and the courts found this requirement was not met. *Id.* However, Plaintiffs incorrectly equate

7

18CV994 AJB (BGS)

"similarly situated insureds"[8] with "fellow employees" (*Williams*) and "complainants" (*Pioneer*) and ignore significant differences in the circumstances. In *Williams*, the court doubted *fellow employees* of the plaintiff "would expect that information, [contact information], to be withheld from a plaintiff seeking to prove labor law violations *committed against them and to recover civil penalties on their behalf*." *Id.* (emphasis added). The court went on to explain that those fellow employees might want their information disclosed to allow the plaintiff to "vindicate their rights." *Id.* And in *Pioneer*, the court found the second requirement was not met because it seemed "unlikely that these customers, *having already voluntarily disclosed their information* to that company in the hope of obtaining some form of relief, [filing complaints], would have a reasonable expectation that such information would be kept private and withheld from *a class action plaintiff* who possibly seeks similar relief for other Pioneer customers." *Pioneer*, 40 Cal. 4th at 372 (emphasis added).

In finding the second requirement unmet, both courts rely heavily on the information being disclosed for purposes of a class action. This is important in two respects. First, the disclosure of contact information for putative class members "is a common practice in the class action context." *Khalipour v. CELLO Partnership*, No. C 09-02712 CW (MEJ), 2010 WL 1267749, at *2 (N.D. Cal. April 1, 2010) (collecting cases); *see also Pioneer*, 40 Cal. 4th at 373 ("Contact information regarding the identify of *potential class members* is generally discoverable") (emphasis added). In this respect, that custom or practice was a circumstance, absent here, that supported disclosure. *Pioneer*, 40 Cal. 4th at 370 (explaining that the particular circumstances considered as to the second requirement can include "customs, practices, and physical settings surrounding particular activities."). Second, both cases give weight to the benefits there

---

[8] As discussed more fully below, the Court disagrees that these insureds are similarly situated to Plaintiffs, but for purposes of this analysis, the Court uses Plaintiffs' designation. (*See infra* III.B.2.)

8

18CV994 AJB (BGS)

might be to those having their information disclosed as a circumstance supporting disclosure, with the *Williams* court even suggesting fellow employees might hope their information might be disclosed to vindicate their rights. *Williams*, 3 Cal. 5th at 554. There is no similar benefit here.

Additionally, unlike the fellow employees in *Williams* who "would have no reason to expect their information would be categorically withheld," here, a California statute explicitly gives the insureds a reason to think their information will not be disclosed. As noted above, § 791.13 prohibits an insurance company from disclosing any "personal information" about an individual without consent and "personal information" includes an individual's name and address. § 791.02. Although there are exceptions within the statute that allow disclosure, an explicit protection is a circumstance that supports an expectation of privacy in the particular circumstances.[9] Based on the foregoing, the Court concludes the insureds whose contact information would be disclosed have "an objectively reasonable expectation of privacy in the given circumstances." *Williams*, 3 Cal. 5th at 552 (citing *Hill*, 7 Cal. 4th at 35).

As to the third requirement, the Court finds the disclosure of the insureds' names and addresses for the very limited purpose of contacting them through a Court approved letter to obtain their affirmative consent to disclosure of their files is not a "threatened intrusion that is serious." *Williams*, 3 Cal. 5th at 555. The disclosure of only names and

---

[9] These claim files' lack of relevance, (*see infra* III.B.2), is an additional circumstance that could also indicate the insureds have a reasonable expectation of privacy under the circumstances, although the Court need not reach it to find requirement two is met. *Williams* suggests that the purpose of the disclosure may bear on the insureds' expectation of privacy. *See Williams*, 3 Cal. 5ht at 554. The court considered the purpose in obtaining the information, vindication of the fellow employees' rights, a circumstance to consider in analyzing the second requirement. But here, the purpose of the disclosure is to obtain irrelevant information that may have nothing to do with Plaintiffs' claim and no benefit to the insureds. The insureds would certainly not expect a court to order disclosure of their personal information to obtain irrelevant evidence.

addresses and for this limited purpose is not "sufficiently serious in . . . nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underly the privacy right." *Hill*, 7 Cal. 4th at 37. Disclosure of contact information "involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sale pitches." *Pioneer*, 40 Cal. 4th at 373. It is only their names and addresses and the only communication proposed would be approved by the Court. No further information about them would be disclosed absent their consent. This limited disclosure does not constitute a serious invasion of their privacy.

As noted above, because the Court finds the threshold elements have not been met, the Court need not engage in a balancing of interests.

**B. Rule 26 Discovery Scope and Limits[10]**

Plaintiffs argue the contents of all of Allstate's claim files from the Lilac fire are relevant to show a pattern or practice by Allstate of unreasonably denying claims. Plaintiffs assert a pattern or practice is relevant to Plaintiffs' claim for violation of the covenant of good faith and fair dealing (insurance bad faith claim) and Plaintiffs' entitlement to punitive damages. Allstate argues Plaintiffs claims are not supported by any evidence of damage to Plaintiffs' property and seek discovery that is irrelevant to Plaintiffs' bad faith claim or punitive damages. More specifically, Allstate argues the attempt to access all claim files arising from an entire wildfire is overbroad and irrelevant

---

[10] As noted above, Plaintiffs seek the names and addresses of other Allstate insureds through two interrogatories. An interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3). Any objection "must be stated with specificity" and "[a]ny ground not stated in a timely objection is waived" unless excused by the court for good cause. Rule 33(b)(4). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

10

18CV994 AJB (BGS)

in that it encompasses claim files for claims drastically different from Plaintiffs' claim and even Plaintiffs' claim is unsupported by any evidence of damage suffered.

### 1. Applicable Rules

As the parties seeking to compel discovery, Plaintiffs have "the burden of establishing that [their] request[s] satisfy the relevancy requirements of Federal Rule 26(b)(1)." *Louisiana Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). Allstate, as the party opposing discovery, "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Id.* (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). "An opposing party can meet its burden by demonstrating that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 434 (N.D. Cal. 2014) (citing *Khalilpour*, 2010 WL 1267749, at *3); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n. 17 (1978).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) the party seeking discovery has had ample opportunity to obtain the information by discovery

in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

District courts have broad discretion in determining what is relevant under Rule 26(b)(1). *Facedouble, Inc. v. Face.com*, No. 12cv1584 DMS (MDD), 2014 WL 585868, at *1 (S.D. Cal. Feb. 13, 2014). And, the 2015 Amendments to Rule 26 made clear that "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564) D. Ariz. 2016). Limits on discovery may be issued where the "burden or expense outweighs the likely benefits." *Facedouble, Inc.*, 2014 WL 585868, at *1 (citing Fed. R. Civ. P. 26(b)). "The court's responsibility, using all the information provided by the parties, is to consider these, [undue burden or expense and importance of information sought,] and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26 advisory committee's notes.

### 2. Relevancy

Plaintiffs attempt two related arguments to establish the relevancy of the information in every single claim file submitted to Allstate associated with the Lilac fire. First, Plaintiffs argue that these claim files may show Allstate acted in the same manner in handling these insureds' claim as it did in handling Plaintiffs' claim, however there is no connection between these insureds' files and Plaintiffs other than arising out of the same fire. Second, Plaintiffs attempt to analogize this case to California cases that have found other insureds' or claimants' evidence relevant, however, as discussed below, the discovery sought in those cases was extremely limited as compared to the broad discovery sought here that lacks any connection to Plaintiffs' claim.

Plaintiffs' assertion of relevancy is based on its claim for breach of the covenant of good faith and fair dealing and punitive damages. In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the polity were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237

F.3d 987, 992 (9th Cir. 2001); *see also Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 823 (9th Cir. 2014) (articulating same elements). "Punitive damages may be awarded when the insurer breaches the covenant of good faith and fair dealing and is 'guilty of oppression, fraud, or malice.'" *Lunsford v Am. Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citing *Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985)).

As to the first line of argument, Plaintiffs argue the information in all Allstate's claim files from the Lilac fire may indicate Allstate engaged in the same conduct in handling those claims that it did in handling Plaintiffs' claim. Plaintiffs provides a list ten practices they allege Allstate engages in:

> (1) Unreasonably failing to fully investigate claims;
> (2) Unreasonably delaying the inspection of property loss claims;
> (3) Unreasonably failing to interview insureds;
> (4) Unreasonably failing to investigate loss of contents;
> (5) Unreasonably failing to investigate losses involving landscaping;
> (6) Substantially delaying the investigation of claims;
> (7) Failing to timely test samples to evaluate a smoke damage loss;
> (8) Failing to equate "loss of use" with "property damage" under California law;
> (9) Failing to communicate promptly and adequately with insureds; and
> (10) Unreasonably failing to pay property loss claims based upon the results of the insurers' inadequate investigations.

(Mot. at 11.)

Even if the Court assumes that a common practice in claims handling by Allstate could be relevant to the second element of the bad faith claim, showing Allstate acted unreasonably in denying *Plaintiffs'* claim,[11] these interrogatories are still overbroad and

---

[11] Plaintiffs rely on cases, discussed below, that considered the relevancy of other insured discovery or evidence for purposes of a statutory claim under Insurance Code § 790.03, which required proving a general business practice. But here, Plaintiffs are asserting a

13

seek irrelevant information. Other than the one practice that refers to smoke damage, any of these alleged practices could apply to any type of damage to anything and from anything. These practices are so vague and broad they could apply to every claim ever handled by Allstate. It cannot be the case that a plaintiff can simply allege an insurance company treated them unreasonably in denying their claim and on that basis alone obtain the claim files of every single claimant that could possibly have been treated similarly. Certainly, Plaintiff has not directed the Court to any authority for such a broad proposition.

Furthermore, as Allstate points out, Plaintiffs' Complaint only alleges smoke damage,[12] but these claim files would encompass claims for houses that burned to the ground which would have no similarity to Plaintiffs' claim. Again, even assuming a pattern or practice ties back to the second element of a common law bad faith claim, "in order to establish 'a pattern of unfair claims practices' the antecedent practice must be substantially similar." *Moore v. Am. United Life Ins. Co.*, 150 Cal App. 3d 610, 625 (1984). Limiting the requests to the Lilac fire does little to help establish relevancy because there is nothing before the Court to suggest this single commonality makes all these claim files relevant to how Allstate treated Plaintiffs. It narrows the universe from an ocean to a lake but still does not provide a sufficient connection between these claim files and Plaintiffs' claim.

---

common law breach of the covenant of good faith and fair dealing (bad faith) claim. The Court could find Plaintiffs have failed to carry their burden in establishing relevancy to their claim, rather than relying on cases addressing a different claim. However, because the Court concludes that the discovery would not be relevant, even assuming such a pattern would be a basis for showing unreasonableness or punitive damages, the Court need not parse out the distinctions.

[12] The Court notes Plaintiffs appear to now also assert they suffered some sort of landscape damage. (Mot. at 4.) Although that is not alleged in the Complaint, the Court will assume, for purposes of this Motion, they have so alleged.

Additionally, as Allstate explains, even if the discovery requests were limited to only include smoke damage claims, there would be still be unique differences as to each, including presence or absence of particles in the home, lab results, proximity to the fire, and whether the experts agreed. (Opp'n at 18.) Significantly, Plaintiffs' relevancy theory is that Allstate failed to timely test samples in handling other claims, therefore it had a pattern and practice of doing so in order to unreasonably deny Plaintiffs' smoke damage claim. Not only do Plaintiffs lack any indication that such was Allstate's practice, Plaintiffs' relevancy premise presumes that timeliness is an important factor in determining whether there was smoke damage. Further, Plaintiffs fail to establish what is meant by "timely" as regards detecting smoke damage, whether other factors effect timeliness, and which factors would be specific to a particular claim. These issues would involve expert testimony and would depend on the circumstances of each specific claim. To allow discovery into other smoke claims would result in a collateral and speculative fishing expedition. Whatever minimal probative value that might result from such an endeavor is greatly outweighed by the other considerations in Rule 26(b), proportionality to the needs of the case and the lack of its importance to resolving this issue. As such, Plaintiffs' discovery requests, even if narrowed to include only smoke damage claims, would still not be "proportional to the needs of the case considering the importance of the issues at stake in the action. Fed. R. Civ. P. 26(b)(1).

Plaintiffs' request here is also distinguishable from the cases on which Plaintiffs rely. They all had very specific connections between the plaintiffs and the insured files at issue. Plaintiffs' own brief acknowledges that *Colonial Life* was limited to the names and addresses of insureds' files that had "similar claims" to the plaintiff. (Mot. at 2.) Unlike the high-level general topics that Plaintiffs' rely on to attempt to tie their claim to every Allstate claim from the Lilac fire, the plaintiff's request in *Colonial Life* was limited to a single adjuster and a particular settlement practice by that adjuster. *Colonial Life*, 31 Cal. 3d at 788-89. Considering an unfair practices claim under § 790.03 and possible punitive damages, rather than common law bad faith, the court found the files handled by the

same adjuster regarding the same settlement practice might be relevant to show his conduct was performed "with such frequency as to indicate a general business practice" of unfair settlements. *Id.* (quoting Cal. Ins. Code § 790.03). The plaintiff and the insureds had a single adjuster engaging in a specific settlement practice in common. *Id.* There is no similar commonality here.

*Moore v. American United Life Insurance* is similarly narrow. 150 Cal. App. 3d 610, 624-25 (1984). The case involved denial of a disability claim based on provision of an inaccurate definition of total disability to a physician. *Id.* at 624. The court was affirming a trial court's decision to admit evidence regarding *one* other insured whose claim was subject to the same definition of total disability. *Id.* at 624-28. The connection between them was the provision of deficient policy definitions of total disability rather than California's legal definition of total disability that applied to both. *Id.* at 625-27.

Plaintiffs' reliance on *Mead Reinsurance Company v. Superior Court* to suggest a single adjuster, common policy, or other connection between plaintiffs and insureds is no longer required is misplaced. 188 Cal. App. 3d 313 (1986). As the court noted "[w]e observe with interest, if not incredulity, that Mead, in its petition here has raised no objection to the order on grounds that there was no showing of relevancy by City in the trial court." *Id.* at 319. The court could not reach the issue because it had not been raised. *Id.* However, the court went on to summarize one of its recent decisions involving a request to produce accident reports for accidents at the same location as the plaintiff's in that case. *Id.* The court explained that in *Nelson*, it found a plaintiff had made no showing "that any of the other accidents were even remotely the same factually as plaintiff's." *Id.* at 320 (citing *Nelson v. Superior Court*, 184 Cal. App. 3d 444, 452-53 (1986)). In the absence of "a showing the other accidents were or might have been even remotely similar in nature to his own, plaintiff failed to show his request was reasonably calculated to discover admissible evidence." *Id.* Even under California's broader relevancy inquiry, some showing of similarity was still required. *Nelson*, 184 Cal. App.

3d at 452-53. Given the lack of similarity, the *Nelson* court characterized the plaintiff's purpose as a "fishing expedition." *Id.* at 453.

Plaintiffs have not established the contents of Allstate's claim files from the Lilac Fire are relevant to Plaintiffs' claim. Seeking every file from an insurance company associated with an entire wildfire regardless of the type of claim, adjuster, policy provision, or any other limitation tying the file to Plaintiffs own claim is a quintessential fishing expedition. Plaintiffs have failed to tie the discovery sought to their own claim in this case. In this respect, Plaintiffs have failed to establish the discovery sought is relevant or proportional to the needs of the case.[13]

## IV. ATTORNEYS FEES

Allstate requests attorneys' fees totally $4,370 pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). Under Rule 37(a)(5)(B), when a motion to compel discovery is denied, the court must order payment of "reasonable expenses incurred in opposing the motion, including attorney's fees," unless "the motion was substantially justified, or other circumstances make an award of expenses unjust." An unsuccessful discovery motion may be considered substantially justified if "reasonable people could differ as to whether the party requested must comply." *Reygo Pac. Corp. v Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982), *overruled on other grounds by Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1055 n.2 (9th Cir. 2007); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (describing "substantially justified" as satisfied by a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action.") (citations omitted). Although, as discussed above, the Court finds Plaintiffs are not

---

[13] Because the Court finds Plaintiffs have not established the sought discovery is relevant or proportional to the needs of the case, the Court need not reach Allstate's argument that Plaintiffs are required to provide undisputed evidence they suffered damage to their property to obtain this discovery.

entitled to the sought discovery, the Court recognizes that reasonable people could differ on this point. Accordingly, the Court denies Allstate's request for its attorneys' fees.

## V.     CONCLUSION

Plaintiffs' Motion to Compel is **DENIED** and Allstate's request for Attorneys' Fees is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 16, 2019

Hon. Bernard G. Skomal
United States Magistrate Judge

18
18CV994 AJB (BGS)