UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jensen Shirley and Karen Shirley,<br>        Plaintiffs,<br>v.<br>Allstate Insurance Co.,<br>        Defendant. | Case No.: 3:18-cv-0994-AJB-BGS<br><br>**ORDER GRANTING**<br><br>**DEFENDANT'S MOTION FOR**<br><br>**SUMMARY JUDGMENT** |

  During the Lilac Wildfire, Plaintiffs Jensen and Karen Shirley were evacuated from their home. After returning, they filed a claim with their home insurance company, Defendant Allstate Insurance Company, for damages related to the wildfires. Allstate now moves for summary judgment arguing there is no evidence showing any damage to the Shirleys' home. In fact, four expert reports state as much. The Shirleys attempt to defeat the summary judgment motion by providing little contrary evidence and hypothetical questions contesting Allstate's investigation. However, the Shirleys cannot win with rhetoric. Because they failed to show there is a triable issue of material fact, the Court **GRANTS** Allstate's motion. (Doc. No. 23.)

## I. BACKGROUND

  Plaintiffs' breach of contract and breach of implied convenient and fair dealing case concerns alleged damage done to their home from the 2017 Lilac Fire. (Doc. No. 1-3 ¶ 7.) After evacuating their home, Plaintiffs allege "the entire interior of the home, and all of its

contents, were severely smoke damaged." (Id. ¶ 7.) Plaintiffs filed a claim with Allstate for damages, which was later denied. (Id. ¶¶ 8–9.)

Defendants argue despite multiple stages of expert testing show no physical smoke damage, soot, ash, or char, was found in the Shirleys' home, justifying their denial of Plaintiffs' insurance claim. Plaintiffs dispute this, asserting that Allstate purposely narrowed the search of their home to soot, ash, and char in order to deny their claim. Plaintiffs also claim Allstate failed to test their furniture, clothing, or outside landscaping for damage as well.

## II. LEGAL STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.

The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. If the moving party carries its initial burden, the burden of production shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Id.* at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

The Shirleys' complaint brings two causes of action for breach of contract and

2

3:18-cv-0994-AJB-BGS

breach of implied covenant of good faith and fair dealing. (Doc. No. 1-3 at 5–6.) The Shirleys also request punitive damages. (*Id.* at 7.) Allstate moves for summary judgment on the two causes of action and the punitive damages request.

### A. Breach of Contract

There are two issues regarding the breach of contract claim. First, Allstate argues they did not breach the contract because no expert found evidence of wildfire contamination in the home. Second, Allstate argues the Shirleys never submitted a claim for landscaping damages, and although they try to improperly raise it later in the proceedings, it does not create a triable issue of material fact and the Court should grant summary judgment regarding these issues as well.

#### *1. Evidence of Wildfire Contamination*

Allstate asserts Plaintiffs have the burden of establishing "an event is a claim within the scope of basic coverage." (Doc. No. 23-1 at 16 (quoting *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1365 (9th Cir. 1992)).) Here, Allstate argues that means "the Shirleys had the burden in establishing that 'physical loss to the property,' defined as 'physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.'" (*Id.* at 17.) Allstate further asserts that under their insurance policy, the Shirleys "cannot meet that burden by alleging the existence of smoke 'vapors, fumes' and 'contaminants or pollutants.'" (*Id.*)

Here, Allstate states of the four different experts who ran tests on the Shirleys' home, none found evidence their home suffered "ash or soot contamination from the wildfire." (*Id.*) Several people—hired by both parties—inspected the home. The Shirleys hired several people to assist them with their insurance claim. First, they hired Marc Gross, an adjuster. Gross then hired Bill Hersum, a remediation contractor. The Shirleys also hired an environmental consulting firm, VERT Environmental. David Kelly, a VERT representative, inspected the property. Allstate, as a part of their internal process, sent an adjuster to inspect the Shirleys' home, Andrew Ansardi. Allstate later hired an expert, RiskNomics LLC, to inspect the home after litigation commenced.

Yet, of all the hired experts, no one found any wildfire contamination was present in the Shirleys' home. Working for the Shirleys, EMSL Analytical analyzed materials VERT sent them and found no wildfire contamination. VERT's report initially supported the Shirleys' allegations that there were wildfire contaminants in their home. It stated VERT found char damage indicative of "a combustion by-product," "as well as opaque dark particles (categorized as burnt rubber), and concluded by "confirm[ing] the presence of smoke contamination within the property." (Doc. No. 23-4, Exhibit 2, 35–37). However, both Missy Waldman—VERT's employee who sent the email to Marc Gross with the purported findings—and Nathan Borsheim—the president of VERT—contradicted these initial findings.

First, as to the char damage, Borsheim testified that he could not confirm that the two percent char finding came from the Lilac fire. (Borsheim Depo., Doc. No. 23-11 at 26.) Second, as to the burnt rubber, both Borsheim and Waldman confirmed the burnt rubber finding was a mistake. (Borsheim Depo. at 25.) Burnt rubber is usually associated with combustion by-products, (*id.*), thus its presence would be indicative of wildfire contamination. However, Borsheim testified that the lab report erred and Waldman confirmed she mis-typed. (*Id.*) The correct finding was "rubber dust." (*Id.*)

Third, as to the soot and ash, VERT never confirmed there was ash or soot inside the Shirleys' home. (Borsheim Depo. at 20.) Regarding the Shirleys' claims regarding wildfire odor, Waldman confirmed that VERT never made a finding that any odors were from the wildfire and stated the company does not "do causation." (Waldman Depo., Doc. No. 23-11 at 45.) Finally, regarding VERT's conclusions, Borsheim stated the report sent to Gross and the Shirleys was a "limited preliminary inspection," and not a formal report. (*Id.* at 16–17.) Borsheim stated VERT never made a determination whether the wildfire was the cause of the contamination. (*Id.* at 19.)

Moreover, Ansardi, Allstate's adjuster, found no ash or soot was present in the home, nor did he smell any smoke inside the home. (Andrew Ansardi Decl., Doc. No. 23-14, ¶¶ 4–5.) Hersum, the Shirleys' remediation contractor, also found no evidence of soot or ash,

nor did he smell any smoke. (Bill Hersum Depo., Doc. No. 23-11 at 53; 54.) Allstate then hired a new expert, RiskNomics LLC, to inspect the property again. However, they found no evidence of wildfire contamination. (Doc. No. 23-10 at 5–6.) Mr. Shirley admits no expert could find ash or soot in his home. (Jensen Shirley Depo., Doc. No. 23-12 at 149.) After the Shirleys brought this suit, RiskNomics against tested, and again found no contaminants in the home. (Doc. No. 23-13 at 75–130.)

Allstate argues that because no expert could find evidence of wildfire soot or ash contamination in the Shirleys' home, Allstate did not breach its contract with the Shirleys by denying their insurance claim. Thus, Allstate requests the Court grant summary judgment on the breach of contract claim. The Shirleys argue that Allstate "continues to mischaracterize wildfire residue as involving only 'soot,' 'ash,' and 'char,'" when it "includes a wide range of particulate material." (Doc. No. 25 at 16.) The Shirleys charge that Allstate only tested for soot, ash, and char thus they could have never discovered if any other contaminants existed within the home from wildfire. (*Id.*) The Shirleys assert Allstate's limiting tests were self-serving and "designed to withhold insurance policy benefits for damage caused by smoke contamination." However, Allstate retorts that Plaintiffs' own expert, Dan Baxter, testified that "the industry standard for determining whether wildfire residue exists requires the use of analytical testing." (Doc. No. 26 at 3.) Further, the Shirleys' never put forth any expert or other testimony challenging Allstate's methods or suggesting what the testing standards should have been. Notably, the Shirleys' own experts tested for the same byproducts as Allstates; while the Shirleys' never hired one expert to test their hypothesis.

The Shirleys contend there was substantial evidence of contamination from an "interior smoke smell" and "the occupants' inability to breathe." (*Id.*) Whether or not these items can fit the definition of "contaminate," the Shirleys argue, is a question of material fact that should be left to a jury to decide. (*Id.* at 17.) The debate arises when defining whether the contamination constitutes a physical injury and property damage under the policy. However, Allstate argues that detection of an odor is not an appropriate standard to

measure injury. (Doc. No. 26 at 5.) Both RiskNomics and MicroLab Northwest "have offered unrebutted expert testimony" reporting as such. (*Id.*) Allstate further argues that even if odors "were a proper industry standard, plaintiffs' expert VERT could not determine the origin of the smells." (*Id.*)

Allstate asserts that to date, the Shirleys have provided no evidence of actual contamination. Through four experts and several adjusters, nothing has been confirmed showing contamination or physical injury, as required by the policy. The Shirleys' presentation of rhetorical questions in their brief does not amount to evidence showing a genuine issue of material fact exists regarding this issue. For example, the Shirleys ask "[i]s there really a conceptual difference between harmful living conditions which result from smoke particles and which result from asbestos? They are both harmful irritants, and are both contaminants, and both can cause cancer." (Doc. No. 25 at 18.) The Shirleys also ask "Did Mr. Ansardi's investigation fall on its face when he looked for only soot and ash and not other contaminants?" (*Id.* at 23.) Although the framing of these questions sounds persuasive, there are no tests that suggest smoke particles existed in the home and the Shirleys have presented no basis for suggesting Ansardi (or any of the other inspecting experts) were under any duty to look for any other types of contaminants.

Thus, the Court agrees with Allstate. Based on the evidence presented, the Shirleys did not carry their burden of establishing that there was physical damage to their property based on contaminants from the wildfire. There is no genuine dispute of a material fact as to whether there were any verifiable contaminants in the Shirleys' home. Accordingly, the Court **GRANTS** summary judgment on the breach of contract issue.

### 2. *Landscaping Claims*

Allstate argues the Shirleys attempt to create a triable issue of material fact based on a belated assertion of burnt vegetation. (Doc. No. 23-1 at 27.) Allstate asserts the Shirleys "never made an insurance claim to Allstate for policy benefits for supposedly burnt vegetation." (*Id.*) Moreover, Allstate notes the Shirleys did not mention any burnt vegetation in their complaint, did not reference damages from burnt vegetation in their

Rule 26 disclosures, or in their interrogatory responses. At the motion hearing, the Shirleys stated they sent Allstate a letter in March 2019 regarding this issue, nearly two months after both fact and expert discovery deadlines had passed.

The Shirleys argue that their "alleged failure" to claim this loss is just a diversion from Allstate's inadequate investigation. (Doc. No. 25 at 21.) The Shirleys' citation of case law suggests they are arguing Allstate failed to investigate evidence which would have shown there was burnt landscaping purposely to narrow their liability coverage and allow them to deny the claim. (*Id.* at 21–22.) The Shirleys propose another hypothetical question asking whether Ansardi's investigation failed "when he never bothered to look for landscape (trees and bushes) fire damage?" (*Id.* at 23.)

However, both a note in the claim notes by the adjuster and accompanying photos of the exterior of the Shirleys' house suggest he inspected the exterior of the home and found no ash and/or soot damage. (Doc. No. 23-4, Ex. B, at 24.) Although the Shirleys' claim they initiated a claim for these issues and that there was damage "in plain view," the Shirleys provide no evidence to support either contention. (Doc. No. 25 at 23.)

Again, a series of rhetorical questions designed to expose what Allstate could have done differently or better in hindsight do not amount to evidence. At this stage, the Shirleys have the burden to show there was physical damage to their property. Allstate has shown through its evidence there was not, thus the burden shifts to the Shirleys. They have not shown a triable issue of material fact exists regarding this claim, thus the Court **GRANTS** summary judgment as to this claim.

### B. Bad Faith Claim

Allstate moves for summary judgment on the Shirleys' bad faith claim against them regardless of how the Court rules on the breach of contract issue. (Doc. No. 23-1 at 19.) Allstate argues this claim fails to two separate reasons. First, because "there can be no bad faith where no benefits are owed." (*Id.*) Second, "there is no evidence of bad faith." (*Id.*)

As to the first argument, case law is clear that when no benefits are owed, an insurer cannot be liable for bad faith. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)

7

3:18-cv-0994-AJB-BGS

("Where benefits are withheld for proper cause, there is no breach of the implied covenant."). Here, because the Court found Allstate did not breach its contract in finding the Shirleys were not entitled to any policy benefits, their claim for bad faith fails.

Allstate also argues that their decision to deny benefits was reasonably made as there was a genuine dispute regarding whether there was contamination under the policy. In California, when there is a genuine dispute and the decision to deny coverage was reasonable—even if it was ultimately wrong—insurers are not liable "for breach of the covenant of good faith and fair dealing." *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 97 (2003). Another case states even if the insurance company is liable for breach of contract, so long as there was a genuine dispute as to the existence of coverage liability, then there is no bad faith. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001).

Here, Allstate argues that because four expert reports showing there was no contaminant damage. First, the Shirleys' expert coordinator, Hersum, agreed with Allstate's adjuster, Ansardi, that there was no soot or ash at the property. Second, other expert reports from RiskNomics and MicroLab Northwest confirmed there was no evidence of soot or ash at the property—claims which Allstate allowed the Shirleys to respond to or submit additional reports to, which they did not.

The Shirleys allege Allstate's actions were not mistaken, but rather were "a conscious and deliberate act which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." (Doc. No. 25 at 24.) Without citing to any supporting evidence to prove their theory, the Shirleys once again posit a list of rhetorical questions in an attempt to create a genuine issue of material fact. They ask:

> Did Allstate unreasonably fail to investigate the Shirleys' loss of Landscaping? Does Allstate continue to ignore it? Did Allstate unreasonably fail to investigate the Shirleys' damage to clothing and other contents? . . . Did Allstate's environmental experts, RiskNomics and Mr. Prater, unreasonably ignore the smell of smoke and look only for soot, ash, and char particles and

no other indicia of smoke contaminants? And did Allstate unreasonably rely on such narrowly scoped test results?

(*Id.*)

However, as previously stated, simply asking these questions does not rebut Allstate's contentions—namely that they had enough evidence to reasonably rely on when denying coverage. The Shirleys have not set forth any facts showing a genuine issue of material fact remains. Thus, the Court **GRANTS** Allstate's motion for summary judgment on this claim

### C. Punitive Damages

Finally, Allstate moves for summary judgment on the Shirleys' claim for punitive damages based largely on the same arguments as the bad faith claim. Allstate notes that even proving bad faith does not amount to a punitive damages claim. (Doc. No. 23-1 at 24 (citing *Beck v. State Farm Mut. Auto Ins. Co.*, 54 Cal. App. 3d 347, 355–56 (1976) ("Proof of a violation of the duty of good faith and fair dealing does not establish that the defendant acted with the requisite intent" required for punitive damages)).) Further, at the summary judgment stage, a Court is required to look at punitive damages through the clear and convincing standard. *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1118–21 (2001).

Allstate argues the Shirleys cannot meet these standards because there is no evidence to show Allstate acted with bad faith, yet alone "clear and convincing evidence of malice, oppression, or fraud." (Doc. No. 23-1 at 25.) Allstate also notes that a third party, Pilot, adjusted the claim and that no Allstate employee was involved with the coverage decision. (*Id.* at 25–26.)

The Shirleys respond by arguing that Ansardi and Allstate's other representatives unreasonably narrowed the scope of their investigation and consciously disregarded the Shirleys' health and safety. (Doc. No. 25 at 25.) The Shirleys claim this despite the fact they have no evidence to support it, not even a declaration. The Shirleys then argue "a triable issue of material fact exists as to whether or not Allstate's behavior rises to the level of Malice or Oppression contemplated by the law." (*Id.*)

9

Yet, as the Court has stated throughout, rhetorical questions and conclusory assertions are not enough to survive summary judgment. The case is no longer at the pleading stage. The Shirleys needed to provide some scintilla of evidence showing "conscious disregard" other than allegations stating as such. Because the Shirleys have not shown a genuine issue of material fact exists as to whether punitive damages are warranted, the Court also **GRANTS** Allstate's motion for summary judgment on this claim.

## IV. CONCLUSION

Allstate persuasively presented a case disputing the Shirleys' claim that smoke damaged their home. Four experts, some hired by Plaintiffs themselves, could not show there was any physical damage to the home or any smoke particles in the home. Although the Shirleys accuse Allstate of limiting their testing to soot, ash, and charring, the Shirleys have not asserted any other industry standard for testing smoke damage from a wildfire, nor presented any expert testing confirming their theory.

There is simply no competing evidence showing that Allstate breached its contract in denying coverage to the Shirleys regarding their claim that smoke from the wildfire damaged their home. Further, the Shirleys have not shown beyond conclusory accusations that Allstate acted in bad faith or in a way worthy of punitive damages. While the Shirleys have a lot of rhetorical questions, they have no answers, evidence, or facts to support their theories—a critical defect to their case.

Accordingly, the Court **GRANTS** Allstate's motion for summary judgment. (Doc. No. 23.) As this resolves all the claims in the Shirley's complaint, (*See* Doc. No. 1-3 at 3, 5–7), the Court **VACATES** all scheduling dates previously set. The Court also **DIRECTS** the Court Clerk to enter judgment in favor of the Defendant and against the Plaintiffs and each of them and close the case.

**IT IS SO ORDERED.**

Dated: August 12, 2019

Hon. Anthony J. Battaglia
United States District Judge